## Parriott Trust

*Harton S. Semple,* for petitioner.
*Tener, Van Kirk, Wolf & Moore,* for respondent.
*Scott & Neely,* guardian ad litem, trustee ad litem.

HAY, J., September 16, 1969.—On January 12, 1955, Kathleen C. Parriott executed an irrevocable trust agreement with Fidelity Trust Company, now the Pittsburgh National Bank, Pittsburgh, Pa. By its terms, Kathleen C. Parriott, of the City of Tulsa, State of Oklahoma, referred to therein as the donor, irrevocably conveyed to the trustee certain items of property in trust wherein the trustee would pay the net income from the trust estate to the donor together with such portion or portions of the principal of the trust estate which may at any time be required to provide a minimum payment of $15,000 quarterly

to the donor for and during the term of her natural life. Upon the death of the donor, the trustee would then pay, assign, transfer and deliver the principal of the trust estate, together with any accrued and undistributed income thereon to the executors, administrators or personal representatives of the donor.

The trustee filed its first and partial account on December 31, 1968, and in its petition for distribution prayed that the assets, including income, be awarded back to the trustee for further administration in accordance with the terms of the trust agreement. At the audit, counsel for Kathleen C. Parriott, individually, presented a petition for change of situs of trust pursuant to section 309 of the Orphans' Court Act of 1951.

Respondent, Pittsburgh National Bank, trustee, answered the latter petition, taking the position that this court should deny the petition for a change of situs of the trust as it did not meet the requirements of section 309 of the Orphans' Court Act of August 10, 1951, P. L. 1163. Section 309 of the Orphans' Court Act of 1951, reads as follows:

"Change of Situs—A court having jurisdiction of a testamentary or inter vivos trust, on application of a trustee or of any party in interest after such notice to all parties in interest as it shall direct and aided if necessary by the report of a master, and after such accounting and such provision to insure the proper payment of all taxes to the Commonwealth and any political subdivision thereof as the court shall require, *may* direct, notwithstanding any of the other provisions of this act, that the situs of the trust shall be changed to any other place within or without the Commonwealth if the court shall find the change *necessary or desirable for the proper administration of the trust.* Upon such change of situs becoming effective by the assumption of jurisdiction by another

court, the jurisdiction of the court as to the trust shall cease and thereupon the situs of the trust for all purposes shall be as directed by the court." (Italics supplied.)

This court then appointed Samuel S. Scott, Esq. as guardian and trustee ad litem, to examine the petition and to advise the court by written report as to whether a change of situs is necessary or desirable for the proper administration of the trust.

Section 309 of the Orphans' Court Act of 1951 gives this court the power and jurisdiction over an inter vivos trust to direct a change of situs if the court shall find the change *necessary or desirable for the proper administration of the trust.* The burden is, therefore, on petitioner to show to this court that a change of situs of the trust is necessary or desirable for proper administration of the said trust.

Petitioner alleges in her petition, inter alia, that the transfer of the situs of the trust to Oklahoma is desirable as petitioner is a resident of and domiciled in Tulsa, Oklahoma; that at the time the trust was executed, petitioner's husband had various business connections in Pittsburgh and her husband is now deceased; that all of petitioner's affairs are administered in Oklahoma and upon her death her will will be probated in Oklahoma, and that all the assets of her estate, including the assets of this trust will be administered there. Petitioner then concludes by stating: "That it is therefore completely desirable, logical and sensible that the situs of the said trust be changed to Tulsa County, Oklahoma."

The guardian-trustee ad litem advised the court that petitioner has not supplied any reason why the trust cannot be continued to be properly administered in its present situs. This court also finds that the petition, as filed, is bare of any allegation that the trust has been improperly administered, although in

petitioner's answer to the new matter of respondent, petitioner avers that the provisions of paragraph tenth of the irrevocable trust agreement were not observed as her (petitioner's) consent and approval to the succession of the successor trustee were not obtained. This court must note, however, that the successor trustee properly administered this trust for some 10 years without petitioner raising any objections, and it appears to the court to be more of an afterthought than a valid reason to support petitioner's position. It is the opinion of this court therefore that petitioner's long delay in raising this point constitutes a waiver of any right of hers, if any existed, to object to the succession by merger of Pittsburgh National Bank to the trusteeship. Moreover, petitioner has received quarter annual reports from the successor trustee; has made no objection to that successor, until now; has accepted principal and income payments in accordance with the trust instrument; corresponded with it on occasion as the trustee, and until now has treated the successor trustee as a valid successor.

In addition, the Banking Code of May 15, 1933, P. L. 624, provides for the application for the appointment of a substitute fiduciary by persons interested in investments held in a fiduciary capacity by banks merging under its provisions. If petitioner had wished to object to the succession of the present trustee, she had a procedure to do so, as set forth therein. See 7 PS §819-1410 governing but now repealed.

In addition to the aforementioned reasons, the court finds those allegations made by petitioner as to the desirability of change of situs to be without merit, as they have no bearing on the proper administration of the trust. Petitioner, as the life beneficiary of the trust, has no control over its administration and no responsibilities to discharge under its provisions,

nor are there special problems involved in the transfer of the trust principal from the trustee to her personal representative when the time for termination of the trust is at hand. Petitioner's circumstances were substantially the same at the time she executed the trust as they are now. She was a resident of Oklahoma then and now, and the only change in her status has been the unfortunate death of her husband. However, this court is unable to see why petitioner's husband's death has any bearing in itself in the proper administration of the trust. No allegation has been made nor has there been any evidence that his confidence in the original trustee was misplaced. He had no voice or control in the administration of the trust during his lifetime by the terms of the trust agreement. It is the opinion of this court, therefore, that this fact, standing alone, does not, in itself, allege why this circumstance suddenly affects the proper administration of the trust.

With respect to section 309 of the Orphans' Court Act of 1951, this court can only say that its language is clear and unambiguous. That it gives this court jurisdiction over the trust, and great discretion in applying a change to the trust situs cannot be doubted. This court has to find that a change of situs is desirable or necessary for proper administration of the trust if it orders such a change. However, this court is satisfied that under the statute such a change shall not be made to satisfy the mere whim or caprice of any party in interest. This fact is buttressed by section 309 itself wherein it provides for notice to all parties in interest as the court shall direct and the report of a master if necessary. The change of situs of the trust is not a matter to be taken lightly but one which must be carefully considered by the court and all aspects of such a change carefully reviewed. The report of the trustee-guardian ad litem indicates that not

only does the requested change of situs offer no advantages for proper administration, but that it will have definite disadvantages. His report shows that after an examination of applicable Oklahoma statutes, decisions and interrelation between corporate trusts and the district courts of Oklahoma, that Oklahoma has nothing to add that would make administration of the trust more proper in that State than as is now assured in Pennsylvania. His report further indicates that the interest of those in posse as well as those of the donor are entitled to the protection of the laws of this Commonwealth; and that a change of situs would occasion added expense to the trust in the form of extra accounting and termination fees; that the Oklahoma trustee would not be subject to any provisions in the agreement terminating trustee's fees; that the supervision of investments in Pennsylvania municipal bonds by an Oklahoma trustee would be difficult, and that the alternative wholesale portfolio changes would result in additional expenses and a consequential reduction of principal. This court, therefore, finds that a change of situs of the trust to Oklahoma would be neither necessary nor desirable, but to the contrary, unnecessary and undesirable, for the proper administration of the subject trust.

Nor does this court's examination of the applicable case law provide any support for petitioner's position. In the 18 years following the adoption of section 309 of the Orphans' Court Act of 1951, there have been surprisingly few decisions in this Commonwealth dealing with its application. This has undoubtedly resulted, in this court's opinion, from the clear and unambiguous language of section 309 and the great discretion given therein to the court.

An unreported case, Estate of Clarence P. Byrnes, Dec., no. 5118 of 1955, decided by the Hon. William

S. Rahauser of this court in 1959 is strikingly similar to the case at bar. In that case, the daughter and only child of settlor was the life tenant of an irrevocable inter vivos trust created in 1921. She petitioned the court for change of situs to Los Angeles, Calif., on the grounds that she and her family, the trust remaindermen, had long been residents of California; that she believed the administration of the trust should be located where they could be in closer touch with it; that many of the men employed by the Allegheny County corporate fiduciary in whom settlor had had confidence were no longer employed there; that communication with the trustee's representatives was difficult; and, that her children, as eventual corpus beneficiaries, could become acquainted with investments and procedures if a Los Angeles corporate trustee was appointed.

The guardian-trustee ad litem appointed by the court opposed the change of situs, finding that the present trustee was well acquainted with the affairs of the trust and "superbly instituted to efficiently manage" the affairs to the advantage of the parties in interest. He argued that no proper or sufficient reason had been advanced by petitioner to remove the present trustee, who had not resigned, that the change was not "necessary or desirable for proper administration" under section 309 and that the change would cause many conflicts of law and added expense to the beneficiaries. Judge Rahauser in his excellent opinion noted that the only change in circumstances since the creation of the trust related to the life beneficiary's residence in California, and that the trust instrument vested no power or management in the life tenant. He cited the comment of the Joint State Government Commission as indicative that section 309 was intended to be applied when altered circumstances, or the existence of new circumstances

that could not have been anticipated, made a change of situs desirable. In denying the petition, he reasoned, in his well-founded opinion, that settlor had indicated that he wanted the trust administered under Pennsylvania law, that removal of the situs would incur additional expense not commensurate with any advantage, and that distribution of the trust at termination under California law would involve its community property law, in derogation of settlor's intent. The most persuasive reason for denial, he declared, was that no facts showed that a change was necessary or desirable under section 309, though some evidence indicated that such a change would be detrimental.

As President Judge Boyle so aptly included in his well-reasoned opinion in Frank Trust, 10 Fiduc. Rep. 1 (1958), in quoting Sharswood Estate, 23 Distr. R. 127, 128:

"Inconvenience is not a sufficient reason to justify the appointment of a foreign fiduciary not approved by the court nor the removal and retention of the assets beyond our jurisdiction. The orphans' court will not approve the removal of the trust res from its jurisdiction."

At page 16, Judge Boyle went on to state:

"The Orphans' Court of Allegheny County has always exercised a close supervision over the corporate fiduciaries which are within its jurisdiction. . . . Our local practice has resulted in a very high standard of performance by corporate fiduciaries, which has been accompanied by a minimum of losses to beneficiaries of trusts."

Although the Frank Trust case did not specifically involve section 309 of the Orphans' Court Act of 1951, a change of situs would have been the ultimate result if the request of the individual trustees had been

granted. Denial of the request in the face of the fact situation there presented, for the reasons given by the court, again demonstrate the necessity that compelling circumstances must exist before a change of situs will be decreed.

Brown Estate, 12 D. & C. 2d 227, 7 Fiduc. Rep. 559 (1957), is distinguishable. It deals primarily with a Federal estate tax apportionment problem and partially with the question of a change of situs. That part of the decision dealing with the change of situs is quoted in its entirety as follows:

"All parties in interest have submitted their petition praying that the situs of the trust be changed to The State of California inasmuch as there are no longer any parties connected with the trust who are residents of the Commonwealth of Pennsylvania. The prayer of the petition is granted and the situs of the trust is changed to the State of California as set forth in said petition."

It must be noted, however, that that case was nonadversary; all parties concurring in the change. See also Newbold Estate, 28 D. & C. 2d 92 (1962), and Gundaker Estate, 29 D. & C. 2d 101 (1962).

Kerr Trust, 40 D. & C. 2d 415 (1966), is also readily distinguishable, where a provision in the trust instrument permitted nonresident beneficiaries, having an adequate interest, to direct the resignation of the corporate trustee and to name a new corporate trustee. No other reason justifying a change of situs was reported by the court, which found the change "desirable" after the beneficiaries named a nonresident corporate trustee. The inclusion of a power in nonresident beneficiaries to *direct* resignation of the corporate trustee and to name a new corporate trustee, almost certain to be a nonresident, is clear evidence of the intent of the settlor that the situs of the trust

*should* be changeable to *another* State if such beneficiaries requested it. See section 308(a) of the Orphans' Court Act, which reads as follows:

"(a) When provided for in trust instrument. If the trust instrument expressly provides for the situs of the inter vivos trust, its situs shall be at the place within or without the Commonwealth which is in accord with such provision."

In the most recently reported case, Jadwin Trust, 45 D. & C. 2d 418 (1968), the trustee itself petitioned for a change of situs to Illinois. Again in this case, all beneficiaries and trustees resided in Illinois, where the trust res was located. The guardian-trustee ad litem appointed by the court raised a question as to whether a provision in the trust instrument requiring the trust to be construed and administered under Pennsylvania law would prevent the court from granting the change of situs. However, the court in granting the prayer for a change of situs, held that the language of the provision merely required the application of Pennsylvania law, regardless of the location of the trust situs.

For the reasons expressed in this opinion, petitioner's request for change of situs of her trust is denied. In this court's opinion, it would be an abuse of discretion for this court to approve such a change of situs on the allegations of petitioner as are presently before this court. An order will, therefore, be entered dismissing the petition filed by Kathleen C. Parriott, individually, for a change of situs. A decree will, therefore, be entered, as requested by the trustee, awarding the assets of the within trust back to the trustee for further administration in accordance with the trust instrument.

## ORDER

And now, September 16, 1969, after consideration

of the petition of Kathleen C. Parriott for a change of situs of the trust and after considering briefs filed thereon and the report of the guardian-trustee ad litem, petitioner's petition for a change of situs for the trust is denied. It is further ordered, adjudged and decreed that a decree will be prepared awarding the assets of the trust back to the present trustee for further administration in accordance with the trust agreement.